IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **KEVIN LUNDY, R21613,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 24-cv-2572-DWD** |
| | ) | |
| **ANTHONY WILLS,** | ) | |
| **ANTHONY B. JONES,** | ) | |
| | ) | |
| **Defendants.** | ) | |

# MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Kevin Lundy, an inmate of Illinois Department of Corrections (IDOC), currently detained at Lawrence Correctional Center brought this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights at Menard Correctional Center (Menard). Plaintiff faults Wills and Jones for the conditions of confinement he experienced in segregation for a month in 2022. Defendants filed a Motion for Summary Judgment (Doc. 44) on the issue of whether Plaintiff exhausted his administrative remedies prior to filing this lawsuit, as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). Plaintiff responded (Docs. 51, 52), Defendants replied (Doc. 53), and the Motion will now be granted for reasons explained in this Order.

## Background

Plaintiff's initial complaint was signed and dated September 2, 2024, and it was received by the Court for filing on December 6, 2024. (Doc. 1 at 21). Plaintiff's second amended complaint filed on November 6, 2025, is the operative complaint. (Doc. 23 at

13). The second amended complaint alleges that Plaintiff spent 2 weeks in a cell covered in mace, feces, and blood, with biting bugs and little to no air ventilation. (*Id.* at 8). He claims a significant portion of the door was plexiglass, and that the other portion was perforated metal, but that the openings were not big enough to allow the vent to circulate air during the hot summer temperatures. Light was on 24 hours per day. (*Id.*). He had permits for low bunk and low gallery, but his cell was on a high gallery, meaning he had to traverse stairs in pain. He slept on a metal bedframe covered with mace, blood and feces, and without a mattress or pillow, which exacerbated back and shoulder issues. The toilet was broken and contained human waste when he was placed in the cell. He alleges he immediately wrote Wills about it and, when he saw Wills in-person, Wills acknowledged receipt of his letter and vowed to investigate. (*Id.* at 9). He alleges that he also personally alerted Jones to his plight, but Jones declined help. (*Id.*).

Plaintiff was moved to a second cell on a low gallery after two weeks, but it was still infested with biting flies and spiders. (*Id.* at 9). The walls were covered in feces, and the toilet broke two days into his stay in the cell. The showers were upstairs, so he had to painfully ascend to shower. He directly spoke to Jones about the issues and Jones said he would not relocate him. Plaintiff also wrote Wills but got no answer. He remained in the cell for two weeks, during which time he also endured loud banging and screaming. (*Id.*). Upon initial review, the Court allowed the following claim to proceed:

> **Claim 3:** **Eighth Amendment conditions of confinement claim against Wills and Jones for the filth, lack of bedding, lack of a functional toilet, and pests Plaintiff experienced in his two cell placements during the one month of segregation.**

(Doc. 24 at 4, 7). Claims 1 and 2 were dismissed for failure to state a claim. (*Id.*).

The parties undertook discovery on the exhaustion of administrative remedies, and in doing so the parties identified just one relevant grievance, which they agree did not reach final review by the ARB.

## Findings of Fact

Plaintiff's cumulative counseling summary reflects that on June 2, 2022, the grievance office received a grievance—grievance number 8-6-22—from Plaintiff marked as an emergency concerning his cell conditions, and the heat. (Doc. 44-3 at 11). The cumulative counseling summary also indicates that on June 6, 2022, grievance 8-6-22 was returned to Plaintiff after the CAO deemed it not an emergency. (*Id.*). A declaration from grievance officer Lance Phelps attests that Plaintiff never resubmitted the grievance through the normal grievance process after it was returned to him as a non-emergency. (Phelps Decl., Doc. 44-1 at ¶ 13). The appeal log from the ARB does not reflect an appeal of grievance 8-6-22, though it does reflect appeals of other grievances in April, September, and October of 2022. (Doc. 44-2 at 1). For example, a grievance Plaintiff submitted on August 3, 2022, was reviewed at all levels and was returned by the ARB as complete on November 16, 2022. (Doc. 44-2 at 8-19). Additionally, a grievance filed on May 5, 2022, was exhausted at all levels of review. (Doc. 44-2 at 1, 32-35). The internal grievance log from the prison reflects that grievance 8-6-22 was not ever received back by the grievance office for standard review. (Doc. 44-4 at 1).

In his summary judgment response, and in an attached declaration, Plaintiff contends both that grievance 8-6-22 was never returned to him, and that Warden Wills

handled it erroneously by deeming it a non-emergency without investigating. In the original complaint, Plaintiff wrote that he "followed the DR 504 grievance process and the PLRA to the best of ability but he was hindered by the broken down mail system that's run by officers who are claiming they are falling out in the mailroom." (Doc. 1 at 2). In the Amended Complaint, Plaintiff checked boxes indicating that he exhausted his claims at all levels of review, without providing any commentary. (Doc. 23 at 5).

A. Legal Standards

Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In determining a summary judgment motion, the Court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). Historically speaking, courts in the Seventh Circuit have resolved the issue of exhaustion of administrative remedies on paper, or after an evidentiary hearing if there is a genuine dispute of fact. *See e.g.*, *Smallwood v. Williams*, 59 F.4th 306, 315 (7th Cir. 2023) ("In this circuit, we have determined that disputed factual questions that bear on exhaustion can be resolved by a district court judge (rather than a jury) as a preliminary matter, in what is known as a *Pavey* hearing."). Following *Perttu v. Richards*, 145 S.Ct. 1793, 1800 (2025), courts must now consider if an exhaustion dispute is intertwined with the merits of a claim, and if it is, the exhaustion issues must be deferred so that a jury can resolve contested factual issues. The Seventh Circuit has instructed that courts consider this as a preliminary issue before conducting an evidentiary hearing on exhaustion. *See Breyley v.*

*Fuchs*, 156 F.4th 845, 849 (7th Cir. 2025) (noting that before holding an evidentiary hearing on an exhaustion dispute, the district court should consider if the issue of exhaustion is intertwined with the merits of the inmate's claims). The court is not required to conduct an evidentiary hearing if there is no genuine dispute of material fact, and the determination is purely legal. *See e.g.*, *Walker v. Harris*, 2021 WL 3287832 * 1 (S.D. Ill 2021); *Miller v. Wexford Health Source, Inc.*, 2017 WL 951399 *2 (S.D. Ill. 2017).

The Prison Litigation Reform Act (PLRA) provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey v. Conley*, 544 F.3d 739, 740 (7th Cir. 2008). "The exhaustion requirement is an affirmative defense, which the defendants bear the burden of proving." *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011). For a prisoner to properly exhaust his administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Id.* at 1024.

As an inmate in the IDOC, Plaintiff was required to follow the grievance process outlined in the Illinois Administrative Code. 20 ILL. ADMIN. CODE § 504.800, et seq. (2017). An inmate may request that a grievance be handled as an emergency by forwarding it directly to the CAO. 20 ILL. ADMIN. CODE § 504.840. If it is determined that there exists a substantial risk of imminent personal injury or other serious or irreparable harm, the

grievance is handled on an emergency basis, which allows for expedited processing of the grievance. *Id.*

If the inmate is not satisfied with the CAO's response, he can file an appeal with the IDOC Director through the Administrative Review Board (ARB). 20 ILL. ADMIN. CODE § 504.850(a). The ARB must receive the appeal within 30 days of the date of the CAO's decision. *Id.* The inmate must attach copies of the responses from the grievance officer and CAO to his appeal. *Id.* If an inmate is appealing a grievance that the CAO determined to be of an emergency nature, then the ARB shall expedite processing of the appeal. 20 ILL. ADMIN. CODE § 504.850(f).

B. Analysis

Defendants supplied ample evidence suggesting the grievance process was available to Plaintiff, he knew how to use it, and he successfully used it to exhaust grievances during the same timeframe as grievance 8-6-22. In response, Plaintiff makes two arguments—he contends that the process was unavailable because Wills denied his grievance emergency status thus ruling prematurely on the merits, and he argues and declares that he did not get grievance 8-6-22 back, so he could not exhaust it further.

First, as to the argument that Wills somehow inhibited his ability to pursue the grievance by denying it emergency status, this argument is a non-starter. A warden reviewing a grievance for emergency status simply checks a box to indicate he or she believes the grievance is or is not an emergency. *See e.g.*, Doc. 44-2 at 4. There is no space in that area of the grievance form calling for a commentary on the merits of the grievance, and it does not make sense to argue that this initial determination is all that is needed to

exhaust a grievance because even grievances deemed emergencies must be processed at all levels. *See* 20 Ill. Admin. Code § 504.850(f) (specifying that when an inmate is appealing a decision that the warden deemed an emergency, then the ARB shall expedite the processing of the appeal). Thus, Plaintiff's argument that Wills somehow inhibited his ability to grieve his conditions by marking it a non-emergency does not help him to demonstrate he exhausted his remedies.

Second, Plaintiff states in his statement of material facts and in his signed declaration that he never got the response deeming the grievance a non-emergency, implying that this impeded him from exhausting. Statements based on personal knowledge made in a signed pleading can be considered at the summary judgment stage. *See e.g.*, *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003). Plaintiff's factual statement is at odds with the sworn statement of grievance officer Phelps who attests that the grievance was returned to Plaintiff on June 6, 2022. However, Plaintiff does not translate the factual assertion into an actual argument that he could not resubmit a standard grievance. Instead, he immediately circles back to his argument that the warden made the grievance process unavailable by deeming his grievance a non-emergency. Plaintiff also does not explain any steps he took to try to grieve the issue further, and the cumulative counseling summary does not demonstrate that he took any additional steps. The bald assertion that Plaintiff did not get the non-emergency grievance back, when read in the context of his arguments and grievance history, does not create a genuine dispute of material fact. Plaintiff simply believed that once the warden deemed his grievance non-emergency he did not have to go any further, but this belief was incorrect.

## Disposition

Defendants' Motion for Summary Judgment on the issue of exhaustion (Doc. 43) is **GRANTED,** and Defendants' Motion for An Extension of Time to File (Doc. 43) is **GRANTED**. Plaintiff's claim is **DISMISSED** without prejudice for failure to exhaust. The Clerk of Court is **DIRECTED** to enter judgment in Defendant's favor and to close this case.

If Plaintiff wishes to appeal this Order, he must file a notice of appeal with this Court within thirty days of the entry of judgment. FED. R. APP. P. 4(a)(1)(A). If Plaintiff chooses to appeal, he will be liable for the $605.00 filing fee[1] irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-56 (7th Cir. 2008). Moreover, if the appeal is found to be nonmeritorious, Plaintiff may incur a "strike" under 28 U.S.C. § 1915(g). A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline. FED. R. APP. P. 4(a)(4). A Rule 59(e) motion must be filed no later than 28 days after the entry of judgment, and this 28-day deadline cannot be extended.

**IT IS SO ORDERED.**

Dated: November 24, 2026

Judge Dugan
Digitally signed by Judge Dugan
Date: 2026.11.24 11:40:33 -06'00'

DAVID W. DUGAN
United States District Judge

[1] The filing fee increases to $670 on December 1, 2026.